IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-906

Filed 3 September 2025

Iredell County, No. 22CVS001942-480

TYESHA BOLDEN, Plaintiff,

v.

V & A INVESTMENTS, LLC, Defendant.

Appeal by Defendant from Order entered 11 April 2024 by Judge Tonia Cutchin in Iredell County Superior Court. Heard in the Court of Appeals 22 April 2025.

*Eisele Vogel Dixon PLLC, by Kathleen L. Vogel, for Plaintiff-Appellee.*

*BridgehouseLaw LLP, by Stephen D. Koehler, for Defendant-Appellant.*

HAMPSON, Judge.

## Factual and Procedural Background

V & A Investments, LLC (Defendant) appeals from an Order granting Tyesha Bolden's (Plaintiff) Motion for Partial Summary Judgment. The Record before us tends to reflect the following:

On 5 July 2019, Defendant executed a Lease to Purchase Agreement (Lease) with Plaintiff for a residential property located in Mooresville, North Carolina. The Lease provided Plaintiff would lease the property for a term of 24 months beginning

5 August 2019, at a rate of $4,500 per month; $1,200 of each monthly payment would be credited towards Plaintiff's purchase of the property.

The Lease allowed Plaintiff to "occupy the home as [Plaintiff's] primary or secondary" residence and to "utilize the home as a short-term rental property." The Lease provided that, in the event of a breach of the Lease by Plaintiff, she would forfeit her right to purchase the property:

> In the event of breach or default of this Lease by [Plaintiff], [Plaintiff] agrees to forfeit all money that [Plaintiff] has invested towards the purchase of the property, including each monthly credit towards the purchase of the property; money spent on maintenance, repairs, alterations, improvements and upkeep of the property; and the Due Diligence Fee and Earnest Money Deposit made under the Purchase Agreement. . . . Any termination of this Lease by [Defendant] due to breach of the lease by [Plaintiff] shall also terminate any and all rights [Plaintiff] may have under the Purchase Agreement[.]

In the event of a breach of the Lease by Defendant, the Lease provided Defendant would return all money Plaintiff had paid toward purchase of the property:

> In the event of breach or default of this Lease by [Defendant], [Defendant] agrees to reimburse all money that [Plaintiff] has invested toward the purchase of the property, including each monthly credit towards the purchase price of the property; money spent on maintenance, repairs alterations, improvements and upkeep of the property; and the Due Diligence Fee and Earnest Money Deposit made under the Purchase Agreement.

The parties contemporaneously executed an Offer to Purchase and Contract (Purchase Agreement). The Purchase Agreement listed the purchase price at $1,075,000 and provided Plaintiff must pay: a $1,000 due diligence fee; a $24,000

earnest money deposit; $1,200 each month, credited from Plaintiff's $4,500 monthly rent payment as outlined in the Lease; and a $1,021,200 cash payment at closing. Plaintiff was also required to obtain a loan commitment prior to closing. The Purchase Agreement contained a breach and default provision identical to the breach and default provision in the Lease.

On 2 February 2021, the parties executed a Contract Extension Addendum which extended the lease term by 12 months, with a new expiration date set for 5 August 2022.

On 9 November 2021, Defendant received an email from the Iredell County Sheriff's Office, notifying Defendant that commercial events were allegedly being hosted at the property. On 10 November 2021, Defendant sent Plaintiff a letter notifying her it was terminating her Lease. Defendant alleged Plaintiff was "using [the] property as a full-time rental," and as an "event venue[,]" which, according to Defendant, was "wholly unauthorized by the Lease terms." Following Plaintiff's receipt of the letter, Plaintiff sent Defendant a check for the December 2021 rent; Defendant subsequently accepted and cashed the check.

Plaintiff continued paying rent to Defendant, and Defendant never attempted to eject Plaintiff from the property. In May 2022, in accordance with the parties' agreement, Plaintiff secured financing for the purchase of the property, selected a closing attorney, and notified Defendant that she had scheduled a closing on the sale of the property for 17 June 2022. On 12 June 2022, Plaintiff sent Defendant proof of

her financial ability to purchase the property. Defendant did not attend the scheduled closing.

On 4 August 2022, Plaintiff filed a Complaint alleging Breach of Contract, Unfair and Deceptive Trade Practices, and Unjust Enrichment in response to Defendant's failure to attend the closing. Plaintiff alleged she had fully cooperated with the parties' agreement, and Defendant had breached their agreement by refusing to close on the sale and convey title to the property to Plaintiff. In its Answer filed 17 October 2022, Defendant moved to dismiss Plaintiff's Complaint pursuant to North Carolina Rule of Civil Procedure 12(b)(6) for failure to state a claim.

On 13 March 2024, Plaintiff filed a Motion for Partial Summary Judgment, alleging no genuine issues exist as to any material fact in her claim for Breach of Contract and requesting the trial court order Defendant to close on the sale and transfer her the title to the property. During the 28 March 2024 hearing on Plaintiff's Motion, Defendant requested the trial court to deny Plaintiff's Motion because the parties' agreement barred Plaintiff's requested remedy of specific performance. At the conclusion of the hearing, the trial court granted Plaintiff's Motion and ordered Defendant to "comply with the remedy of specific performance[.]" Defendant requested the trial court to certify its Order as a final judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). The trial court denied this Motion. The trial court entered its written order granting Plaintiff's Motion on 11 April 2024. On 6 May 2024, Defendant timely filed Notice of Appeal.

- 4 -

## Appellate Jurisdiction

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Embler v. Embler*, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001) (quoting *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950)). Generally, there is no right to appeal from an interlocutory order. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). However, a party may appeal an interlocutory order if either: (1) the trial court certifies there is no just reason to delay appeal under N.C. Gen. Stat. § 1A-1, Rule 54(b) or (2) if delaying the appeal would affect a substantial right. *Id.* (citations omitted). Here, the trial court denied Defendant's request to certify the Order pursuant to Rule 54(b); thus, we consider whether the Order affects a substantial right.

" 'A substantial right is one which will clearly be lost or irremediably adversely affected if the order is not reviewable before final judgment.' " *McConnell v. McConnell*, 151 N.C. App. 622, 625, 566 S.E.2d 801, 804 (2002) (quotation marks and citation omitted). The burden is on the appellant to establish that "the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys*, 115 N.C. App. at 379, 444 S.E.2d at 253 (citations and quotation marks omitted).

We have consistently held an order granting partial summary judgment is interlocutory because it does not resolve all the issues in the case. *See, e.g.*, *Jeffreys*, 115 N.C. App. at 379, 444 S.E.2d at 253 (" 'A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal.' " (quoting *Liggett Group, Inc. v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993)). Nonetheless, Defendant contends the order at issue affects a substantial right because it "is an interlocutory order concerning title [to property]" and thus is immediately appealable. We disagree.

In support of its argument, Defendant cites *Watson v. Millers Creek Lumber Co., Inc.*, 178 N.C. App. 552, 554, 631 S.E.2d 839, 840-41 (2006) (" '[I]nterlocutory orders concerning title . . . must be immediately appealed as vital preliminary issues involving substantial rights adversely affected.' " (quoting *N.C. Dep't of Transp. v. Stagecoach Vill.*, 360 N.C. 46, 48, 619 S.E.2d 495, 496 (2005))). In *Watson*, the plaintiffs entered into an installment land contract with the defendant, Millers Creek Lumber Company, which provided Millers Creek would convey the land to the plaintiffs upon the plaintiffs' full payment of the purchase price. *Id.* at 553, 631 S.E.2d at 840. Although the plaintiffs complied with the terms of the contract, Millers Creek instead conveyed the land to a third party. *Id.* The plaintiffs filed a complaint against Millers Creek and the third party to whom Millers Creek had conveyed the deed. *Id.* The third party subsequently filed a motion for summary judgment. *Id.* at 554, 631 S.E.2d at 840. The trial court granted the motion and dismissed the action

against the third party; the plaintiffs appealed. *Id.* Because Millers Creek elected not to participate in the appeal, the plaintiffs' appeal was interlocutory. *See Veazey*, 231 N.C. at 361-62, 57 S.E.2d at 381 ("A final judgment is one which disposes of the cause as to *all the parties*, leaving nothing to be judicially determined between them in the trial court." (emphasis added) (citations omitted)). Nonetheless, citing *Stagecoach Village*, the Court allowed the appeal because Millers Creek "stipulated that title to the disputed property rest[ed] in either plaintiffs or [the third party] and their liability, if any, 'cannot be determined until a final decision is entered on appeal[.]'" *Id.* at 554-55, 631 S.E.2d at 840-41.

This Court in *FMB, Inc. v. Creech* addressed a similar argument, and we find its analysis instructive. There, the plaintiff relied on *Stagecoach Village* to argue the interlocutory order at issue was immediately appealable because it concerned title to property. *FMB, Inc. v. Creech*, 198 N.C. App. 177, 180, 679 S.E.2d, 410, 412 (2009). This Court first noted "*Stagecoach Village* and the cases upon which it bases its analysis deal solely with issues of condemnation and the involuntary taking of a private citizen's property by the State of North Carolina[ ]" and concluded its analysis was "inapplicable to the instant case as it does not concern condemnation proceedings." *Id.*

The Court next observed *Watson* was—at the time—the only published opinion which "extended the substantial right exception found in *Stagecoach Village* to an issue outside the area of condemnation." *Id.* at 181, 679 S.E.2d at 412 (citation

omitted). In concluding *Watson* was distinguishable from the facts before it, the Court noted there was no stipulation as to the validity of the appeal in the case at bar, "which was a key factor in the determination in *Watson* that the order was immediately appealable." *Id.* at 181, 679 S.E.2d at 413. Additionally, there was no dispute as to who held legal title to the property. *Id.* Rather, the issue before the Court in *Creech* was "whether there was a valid option to sell the property to plaintiff[.]" *Id.*

Here, as in *Creech*, there is no stipulation as to the validity of the appeal nor a question of to whom title to the property belongs. *See id.* The issue presented to the trial court in this case was whether Defendant had breached its agreement with Plaintiff by failing to convey the title to the property to Plaintiff and involves only the interpretation of the contract terms contained in the parties' agreements. Further, this case does not concern condemnation proceedings; thus, the rule in *Stagecoach Village*—and in turn, *Watson*—is "inapplicable to the instant case[.]" *Id.* at 180, 679 S.E.2d at 412.

Moreover, since this Court's decision in *Creech*, our Supreme Court has also limited the holding in *Stagecoach Village* to proceedings "in the context of condemnation cases." *Stanford v. Paris*, 364 N.C. 306, 312, 698 S.E.2d 37, 41 (2010). "[I]n condemnation cases, after a hearing pursuant to N.C.G.S. § 136-108, appeal of an issue affecting title to land or area taken by the State is mandatory and the interlocutory appeal must be taken immediately." *Id.* at 312, 698 S.E.2d at 41. N.C.

Gen. Stat. § 136-108 provides that in condemnation hearings the trial court must decide all issues *other than damages*. Consequently, orders rendered in such hearings are interlocutory because they do not resolve all the issues in the case. *See Embler*, 143 N.C. App. at 164, 545 S.E.2d at 261. However, immediate appeal is *mandatory* in such cases—even though the order rendered is interlocutory—because it would be futile to "proceed[ ] with a damages trial when questions linger about *what land is being taken and to whom that land belongs*." *N.C. Dep't of Transp. v. Rowe*, 351 N.C. 172, 176, 521 S.E.2d 707, 710 (1999) (emphasis added) (citing *N.C. State Highway Comm'n v. Nuckles*, 271 N.C. 1, 14, 155 S.E.2d 772, 784 (1967)).

In the case *sub judice*, there is no question of what land is being taken and to whom that land belongs. Thus, the reasons for allowing immediate appeal of an interlocutory order affecting title to property as contemplated by *Stagecoach Village* and its corresponding caselaw are not implicated here. *See id.* "The circumstances in which we have extended the substantial right exception found in *Stagecoach Village* outside the area of condemnation are very limited." *Lester v. Galambos*, 247 N.C. App. 245, 2016 WL 1565631, *2 (2016) (unpublished) (citations omitted). Indeed, we have identified only two such cases since our decision in *Watson*, and they are likewise distinguishable. In *Phoenix Ltd. P'ship of Raleigh v. Simpson*, this Court concluded a substantial right was affected where the trial court ordered the defendants to convey property to the plaintiff. 201 N.C. App. 493, 688 S.E.2d 717 (2009). There, as in *Watson* and unlike the case at bar, the defendants had sold the

disputed property to a third party despite having contracted to sell the property to the plaintiff; as such, the question of to whom title to the property belonged remained open. *See id.* at 497, 688 S.E.2d at 721; *Watson*, 178 N.C. App. at 553, 631 S.E.2d at 840. And in *Bodie Island Beach Club Ass'n, Inc. v. Wray*, 215 N.C. App. 283, 716 S.E.2d 67 (2011), which concerned "an action to set aside a deed due to fraud and undue influence[,]" *id.* at 284, 716 S.E.2d at 70, we also allowed the defendant's interlocutory appeal because it concerned title to property. *Id.* at 288, 716 S.E.2d at 72 (citing *Watson*, 178 N.C. App. at 554, 631 S.E.2d at 840-41).

Again, unlike these cases concerning competing or fraudulently conveyed deeds—as in *Watson*, *Simpson*, and *Bodie Island*—no dispute exists here as to who holds legal title to the property. Additionally, although the trial court's Order grants specific performance in favor of Plaintiff, the issue resolved by the Order involves only interpretation of a contractual agreement between the parties—not a title dispute.

Defendant did not present any other grounds for appellate review, and it is not our duty "to construct arguments for or find support for appellant's right to appeal from an interlocutory order[.]" *Jeffreys*, 115 N.C. App. at 380, 444 S.E.2d at 254 (citations omitted). Thus, Defendant has not demonstrated any substantial right would be lost absent immediate appeal. Therefore, we are without jurisdiction to review this matter on immediate appeal. Consequently, we must dismiss Defendant's appeal.

## <u>Conclusion</u>

Accordingly, for the foregoing reasons, we dismiss the appeal for lack of appellate jurisdiction.

DISMISSED.

Judges STROUD and TYSON concur.